**STATE OF HAWAII**, Plaintiff–Appellee, v. **RONALD T. MATA**, Defendant–Appellant

NO. 13887

(CR. NO. 88–2274)

and

**STATE OF HAWAII**, Plaintiff–Appellee, v. **SANTOS ANCHETA**, Defendant–Appellant

NO. 13904

(CR. NO. 88–1263)

MARCH 28, 1990

PADGETT, ACTING C.J., HAYASHI, AND WAKATSUKI, JJ., AND RETIRED JUSTICE NAKAMURA, IN PLACE OF MOON, J., RECUSED, AND INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS, IN PLACE OF LUM, C.J., RECUSED

320

OPINION OF THE COURT BY PADGETT, J.

These are appeals from two cases tried on consecutive days. Defendant–Appellant Ronald Mata (Mata) was charged with, and convicted of, driving under the influence of intoxicating liquor in violation of HRS § 291–4(a)(1) and (2). Defendant–Appellant Santos Ancheta (Ancheta) was charged and convicted of driving under the influence in violation of HRS § 291–4(a)(1) only. The same judge presided over both trials. The appellants were represented by the same firm of attorneys. Virtually identical motions for disqualification of the trial judge were filed, and denied, in both cases. In both cases, the trial judge gave extensive, and detailed, instructions as to the law both prior to the commencement of the trial, and at the conclusion of the trial.

In *Mata*, appellant complains only of the refusal of the trial judge to disqualify himself while in *Ancheta*, appellant complains also of the giving of instructions.

The affidavits of disqualification were based upon HRS § 601–7(b), which provides:

Whenever a party to any suit, action, or proceeding, civil or criminal, makes and files an affidavit that the judge before whom the action or proceeding is to be tried or heard has a personal bias or prejudice either against the party or in favor of any opposite party to the suit, the judge shall be disqualified from proceeding therein. Every such affidavit shall state the facts and the reasons for the belief that bias or prejudice exists and shall be filed before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time. No party shall be entitled in any case to file more than one affidavit; and no affidavit shall be filed unless accompanied by a certificate of counsel of record that the affidavit is made in good faith. Any judge may disqualify oneself by filing with the clerk of the court of

> which the judge is a judge a certificate that the judge deems oneself unable for any reason to preside with absolute impartiality in the pending suit or action.

In *Mata*, the trial judge ruled that the motion to disqualify, which had been filed after the jury was drawn but before the trial itself began, was untimely, but went on to discuss the allegations in the affidavit, and expressly incorporated therein what he had had to say in response to a similar motion and affidavit in a case entitled *State v. Hee*. In *Ancheta*, no question as to the timeliness of the motion was raised, however, the court's remarks in *State v. Hee* were again incorporated in the reasons for denying the motion.

Under the statute, the crucial document which must be filed, when a disqualification is sought, is an affidavit. That affidavit must be filed "before the trial or hearing of the action or proceeding, or good cause shall be shown for the failure to file it within such time," and that affidavit must show that the judge "has a personal bias or prejudice either against the party or in favor of any opposite party to the suit."

In the factual context of the *Mata* case, where numerous similar affidavits had been filed in similar cases, involving the same grounds, by the same attorneys, against the same judge, and where there was a claim that oral notice that such would be filed had been given at pre–trial, and where the actual trial had not begun, even though the jury had been selected, the trial judge's rejection of the affidavit on the basis of timeliness was overtechnical and erroneous, but the error was harmless since the judge did go on to consider the merits, and made the same ruling that he had made in *State v. Hee*, a ruling which he incorporated in stating his reasons.

Essentially, the affidavits make two claims of disqualification. First, that the trial judge had made complaints to the Office of Disciplinary Counsel with respect to the conduct of appellant's counsel, Mr. Cunney in other cases, and, second, that by various memoranda and utterances, the trial judge had indicated that he would

sentence more harshly defendants found guilty of DUI if they had demanded a jury trial.

The statute specifies the ground of disqualification to be "personal" bias against a party or in favor of an opposing party. Obviously bias for or against a party's attorney is not the same thing. A judge, however, under Canon 3C of the Code of Judicial Conduct, should disqualify himself in any proceeding in which his impartiality might reasonably be questioned. If a judge has personal bias or prejudice against an attorney, the judge is not statutorily disqualified, but he, or she, certainly should step aside.

On the other hand, it is inevitable that there will be personality clashes between judges and attorneys, and that judges' observations of the tactics, conduct and demeanor of particular attorneys, who appear before them will influence them in how their adjudicative responsibilities under Canons 3A(1), (2) and (3) of the Code of Judicial Conduct are carried out. In other words, experience with a track record of a particular attorney may well cause the judge to be on guard, in discharging his or her duty to maintain order and decorum in the proceedings, and influence his or her conduct of the trial to insure that the case is tried fairly and competently.

The particular complaint here, however, is with respect to matters involving the conduct of Mr. Cunney, referred by the trial judge to Disciplinary Counsel. Under Canon 3B(3) of the Code of Judicial Conduct, the judge had a duty to refer to Disciplinary Counsel instances of Mr. Cunney's conduct which he perceived to violate the lawyer's code of professional responsibility, and to respond to further inquiries from Disciplinary Counsel with respect thereto. Such conduct was not evidence of bias against Mr. Cunney.

We cannot pass in this proceeding on whether or not the matters referred to Disciplinary Counsel involved unprofessional conduct. We have created, under HSCR 2, a detailed procedure for dealing with such matters by the Office of Disciplinary Counsel, under the direction of the disciplinary board. Only when the matter

in question has survived investigation, has been converted into a formal disciplinary proceeding, and then only when, after hearings before a committee, and the board, discipline is recommended to us, which involves a public reprimand without the consent of the respondent, or more harsh action, would we have occasion to pass upon the matter.

Accordingly, we hold that neither a reference of an attorney's conduct to the disciplinary board, nor a response to inquiry with respect thereto by Disciplinary Counsel, is a ground for the disqualification of a judge.

With respect to the memoranda circulated by the trial judge and the statements allegedly made by him at a pre–trial conference, and his facial expressions during a conversation within the hearing and sight of the appellant's attorney's secretary, all of those matters occurred years before the motions for disqualification in these cases were filed in May of 1989 and before the charges in these cases were filed in 1988. Those memoranda, remarks, and facial expressions, did not concern the appellants personally.

It has long been the law in this jurisdiction, as well as in the federal courts in deciding cases under the parallel federal statute, that a judge whose disqualification is sought must take the facts alleged in the affidavit as true, but can pass upon whether they are legally sufficient. A lengthy, scholarly and detailed review of the law in this respect was set forth by then acting Chief Justice Rice in *Whittemore v. Farrington*, 41 Haw. 52 (1955). The principles laid down there remain the law of Hawaii today. The affidavits filed in the present cases were insufficient to establish a disqualification of the judge since the facts showed no "personal" bias toward the appellants.

The judge in question, however, in both cases, incorporated, by reference, his response to a similar affidavit in *State v. Hee*. In that case, he gave a lengthy soliloquy with respect to the charge in the affidavit that he had indicated to attorneys that in sentencing

convicted DUI offenders he would give consideration to whether or not they had demanded jury trials.

Very obviously the threat, express or implied, of more severe sentencing, in the event of a guilty verdict, if a jury trial is demanded, would be coercive, and would violate a defendant's constitutional rights.

In an analogous situation, a judge at time of sentencing may very well take into consideration the fact that a defendant has pled guilty, and thus indicated remorse, and a start toward rehabilitation, but a judge cannot, in advance, induce a plea of guilty by hinting at more lenient sentencing without violating HRPP 11(d) and a defendant's constitutional rights.

In these cases, the claim made with respect to this issue appears in paragraphs 6 and 7 of the affidavits which read:

6.  On information, Affiant states that on said date and time, in the presence of Michele Beavers, secretary to attorney Paul Cunney, counsel for Affiant, and Amy Kato, clerk assigned to courtroom 5C, and Deputy Prosecuting Attorney Franklin Pacarro, Judge Dannenberg put a smirk across his face and stated that it would be up to defense attorneys whether they go to jury trial or not.

7.  On information, Affiant believes that at a pre–trial conference on Wednesday, April 26, 1986, at 4:00 p.m., Judge Dannenberg couched the aforementioned remarks, paraphrased as follows: [If a judge should show consideration for a person who enters a change of plea of guilty by being lenient, shouldn't there be a standard of punishment that is not as lenient for those who do not change their plea to guilty (persons who exercise their right to jury trial). I am rethinking my position on sentencing first–time offenders.]

As is indicated by the use of brackets and parentheses the statements were equivocal at best, and in 1989 were stale. However, in

the course of the long discourse in the *Hee* case, the trial judge stated:

> I am not saying that I will automatically sentence people to stricter terms if they're convicted by going to trial, either jury or a bench trial. I am saying, and I think it's perfectly proper, that I do consider acknowledging what one has done, if that is appropriate under the circumstances, as an important factor in sentencing. I don't think there's any appellate court that has ever said to the contrary. However, I can only say that I will judge every case on its merits, I have made no judgment in this case, I have suggested no sentence in this case, and your affidavit suggests nothing of the kind, and it would be absurd to think I had.

Given the judge's lengthy discourse as a whole, it seems likely that the first two sentences above quoted were simply unfortunately phrased. They, however, do leave the distinct implication that it is possible that appellants would be sentenced more severely because they had demanded jury trial, and nowhere, in the judge's lengthy statement, is there an unequivocal assertion that he will not consider a demand for jury trial as a factor in sentencing, if the defendant is found guilty. Thus, while the affidavits in these cases were insufficient to establish facts indicating a personal bias or prejudice against the appellants, a reasonable defendant, hearing of the statement we have quoted, could see an implication that if the defendant insists on a jury trial, that fact will be considered in sentencing. If that implication were in fact true, it would constitute a personal bias and prejudice.

We hasten to add that we do not believe that the judge intended any such implication, but he should either have recused himself, or expressly disavowed the implication in no uncertain terms. The judge found it necessary, in *State v. Hee*, to make the long explanation of his sentencing policies because of things he was alleged to have said or implied on previous occasions. A more

strict adherence to the command of Canon 3A(6), on those occasions, would probably have avoided this whole unfortunate controversy.

In *Ancheta*, appellant has specified as error the giving of elaborate and detailed instructions on the law prior to the commencement of the trial and has also claimed error in the instructions given at the close of trial. In *Mata*, no such specifications of error appear. However, the same procedure was followed in both cases. The court gave very detailed instructions on the law of the case to the jury prior to the beginning of the trial itself. In *Mata*, for example, those instructions cover 17 pages of the transcript, the same number of pages covered by the instructions of the court at the close of the trial. In *Mata*, apparently, counsel had no notification in advance that such elaborate instructions were going to be given, and the court refused to permit counsel to interrupt the giving of the instructions to record his objection thereto. The objection was recorded only at the close of the instructions. In *Ancheta*, advance notice was given and advance objection was made.

In both cases, the court both at the beginning of the trial and in its final instructions, stated:

A person is under the influence of intoxicating liquor . . . if he or she has consumed intoxicating liquor sufficient to affect his or her mental or physical facilities . . . or abilities in such a way as to impair, to any perceptible, appreciable, or noticeable degree, his or her ability to operate a vehicle safely. The mere fact that a person has taken a drink does not automatically place him under the ban of the statute, unless such drink has some influence upon the person lessening, in some degree, his ability to operate an automobile safely.

The burden is on the State to prove beyond a reasonable doubt that the defendant's consumption of alcohol impaired, to any perceptible, appreciable, or noticeable degree, the defendant's ability to operate a motor vehicle

safely. The State need not prove that the defendant actually drove in an unsafe or erratic manner or that the defendant caused an accident. It must prove only a diminished capacity to operate safely.

. . . .

If the ability of the defendant to drive safely has been lessened to the slightest perceptible, appreciable, or noticeable degree by the use of intoxicating liquor, then the defendant may be deemed to be under the influence. That condition which brings a driver within the scope of driving under the influence is any interference with or lessening of alertness, any weakening or slowing up of the action of the motor nerves, or any interference with the coordination of sensory and motor nerves which may cause sluggishness where quickness of action is required or which may otherwise signal a diminished capacity to operate a vehicle safely.

These are the instructions to which a substantive, as distinguished from a procedural objection, is made in *Ancheta.*

The procedure followed by the court below, in these cases, of giving detailed instructions on the law with respect to the anticipated legal substantive issues to be raised in the trial, does not fit within the procedural framework contemplated by HRPP 30. Counsel had no opportunity to request the pre–trial instructions before they were given, despite the provisions of HRPP 30(a), and there was no settlement procedure as is required by HRPP 30(b). In *Mata* no opportunity for objection was offered, and in *Ancheta*, the only opportunity to object was to the idea of giving the instructions, not to the individual instructions, since they were not submitted in writing to counsel, and counsel could not know what they would be. The procedures for the settlement of instructions set forth in HRPP 30(b) were developed as a result of many, many years of experience, and are designed to make clear to the appellate

courts the exact position of the parties on instructions given, or refused.

Since the court below did not follow HRPP 30(b) in giving detailed instructions on the law in advance of the trial, there was error.

A court may, of course, to facilitate the jury's understanding of a case, make an appropriate and accurate general statement to the jury of what the case is all about, but the detailed instructions given in these cases went far beyond that, violated HRPP 30, and constituted procedural error.

Finally, the instructions, complained of in *Ancheta*, and given in both cases, both before the trial commenced, and at the conclusion thereof, were erroneous.

HRS § 291–4(a)(1) provides that the offense is committed when: "The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor[.]"

Appellant has argued that we should import into that section the definition appearing in HRS § 281–1 as follows:

> "Under the influence of liquor" means that the person concerned has consumed intoxicating liquor sufficient to impair at the particular time under inquiry the person's normal mental faculties or ability to care for oneself and guard against casualty, or sufficient to substantially impair at the time under inquiry that clearness of intellect and control of oneself which the person would otherwise normally possess.

HRS Chapter 281 regulates the sale of liquor and liquor establishments. HRS Chapter 291 regulates traffic violations. The chapters serve different purposes and are not in pari materia. The definition in HRS § 281–1 does not control the meaning of the term "under the influence of intoxicating liquor" as used in HRS § 291–4(a)(1).

The court below went far beyond the statute in its instructions.

The trial judge equated the statutory term "under the influence of intoxicating liquor" with the "slightest perceptible, appreciable or noticeable degree" of impairment and instructed that impairment included "any interference with" or "lessening of" "alertness," "any weakening or slowing up of the action of the motor nerves," or "any interference with the coordination of the sensory or motor nerves" which may cause sluggishness.

We note that under the statutory scheme a person tested for blood alcohol content, and found to have .05 or less is entitled to a presumption that he is not under the influence. HRS § 291–5(b)(1). Moreover, it frequently happens, in these cases, that police officers perceive some impairment of the motor nerves, and therefore administer field sobriety tests. Under the instructions given by the court, the test of guilt is reduced to the threshold of reasonable suspicion necessary for the officers to justify administering field sobriety tests. As long as the officer perceives some motor impairment, and thus a cause to administer the field sobriety tests, the case for driving under the influence, under the instructions, has been proved.

We are not unaware of the fact that testimony by experts is sometimes adduced which indicates that any consumption of alcohol causes a diminution of the function of the motor nerves. Yet under the definitions given by the court in its instructions, the slightest perceptible, appreciable or noticeable degree of that diminution is sufficient to convict. The sweeping, repetitive and detailed instructions given here were substantively prejudicial and erroneous.

The convictions are reversed and the cases are remanded for a new trial.

*Paul J. Cunney* for appellants.

*James M. Anderson*, Deputy Prosecuting Attorney, for appellee.