708 So.2d 244 (1997)
5-H CORPORATION, et al., Petitioners,
v.
Philip J. PADOVANO, Judge, etc., et al., Respondents.
No. 90887.
Supreme Court of Florida.
November 25, 1997.
Rehearings Denied January 29, 1998 and April 8, 1998.
Louis C. Arslanian, Hollywood, for Petitioners.
HARDING, Justice.
The petitioners seek a writ of prohibition to prevent all of the judges of the First District Court of Appeal from presiding over the petitioners' appeal currently pending in that court. We have jurisdiction[1] and deny the petition.
The petitioners' attorney is Louis C. Arslanian. In a prior related consolidated appeal, a three-judge panel of the district court (Chief Judge Barfield and Judges Lawrence and Van Nortwick) ruled against Arslanian's clients,[2] whereupon Arslanian filed a motion for rehearing on behalf of his clients. In the motion for rehearing, Arslanian argued that the panel had overlooked or failed to consider many important matters, and suggested that the panel not only disfavored one of his clients, but also favored opposing counsel.[3] *245 In referring to opposing counsel's arguments, Arslanian also argued that "what is truly appalling is that ... the panel in the instant appeal would buy such nonsense and give credence to such `total b[___]-s[___].'" In a footnote, Arslanian referred to opposing counsel's argument as "ridiculous" and "a joke," adding that "the use of the term `total b[___]s[___]' without the inclusion of at least 2 or 3 intervening expletives is very kind and generous under the circumstances."
The panel denied the motion for rehearing and, as especially pertinent here, the district court had its clerk forward a copy of the motion to The Florida Bar to review "the appropriateness of some of the comments and language contained in the [motion]" and determine "whether disciplinary proceedings should be instituted with regard to Mr. Louis C. Arslanian's lack of professionalism in this pleading." The Florida Bar thereafter filed a formal complaint against Arslanian, and Arslanian in turn reported the matter to the Judicial Qualifications Commission ("JQC"). According to the present prohibition petition, The Florida Bar ultimately dismissed its complaint against Arslanian upon a finding of no probable cause; the present petition is silent as to what action, if any, was taken on Arslanian's report to the JQC.
Arslanian now represents the present petitioners in a related appeal before the First District Court of Appeal, where Arslanian, on behalf of his clients, filed a motion to disqualify the judges of that court from presiding over the pending appeal. Specifically, Arslanian argued in the disqualification motion:
Aside from the reality of the fear that exists in [Arslanian] and his clients appearing before the same Court in the same case in which the Court instituted a grievance without probable cause, the fact that the Court's partiality might be reasonably questioned mandates disqualification as a matter of law. Such a conclusion from any reasonable observer is inescapable. In light of the fact that Louis C. Arslanian wrote what he wrote and the First District Court of Appeal instituted a grievance thereon only to be dismissed as lacking probable cause ..., could a reasonable observer reach any conclusion other than the conclusion that [the district court's] "impartiality might reasonably be questioned"[[4]] in a subsequent proceeding on the very same matter[?] The answer is obvious.
....
An outside observer could reasonably conclude that the Court would feel embarrassed, humiliated, and even outraged by the comments of Louis C. Arslanian and by the result of a finding of no probable cause in the Court's grievance against Louis C. Arslanian. The same observer could reasonably conclude that Louis C. Arslanian would fear retaliation by the Court and temper his argument and remarks to the extent that his role of an advocate would be so diluted. Such a fear is reasonable when considering the fact that Louis C. Arslanian faced serious sanctions for merely stating that the Court overlooked and misapprehended certain legal and factual matters. Obviously, in the instant appeal, it can be reasonably anticipated that Louis C. Arslanian will claim that the trial court overlooked and misapprehended certain legal and factual matters; otherwise no appeal would have been filed. At each stroke of the pen, the fear that he [Arslanian] may be sanctioned will be present. Further, it is obvious that Louis C. Arslanian is just an extension of his clients, the Appellants, who are the true persons that stand to suffer from the fear.
(Footnote added). The district court judges not otherwise disqualified considered the motion for disqualification in accordance with In re Estate of Carlton, 378 So.2d 1212 (Fla. 1979),[5]cert.denied, 447 U.S. 922, 100 S.Ct. 3013, 65 L.Ed.2d 1114 (1980), and some of them ultimately voluntarily recused themselves *246 from the appeal "in the best interests of justice"; however, four of the remaining district court judges (Chief Judge Barfield and Judges Webster, Davis, and Padovano) denied the disqualification motion as legally insufficient. The district court therefore ordered that the appeal be assigned to a panel made up of three of the four judges who found the motion legally insufficient.
Arslanian, on behalf of his clients, now seeks prohibition relief from this Court, arguing that the disqualification motion below was legally sufficient and that the four district court judges who held otherwise must be disqualified. He accordingly asks this Court to, among other things, prohibit those four judges (and, indeed, any and all of the remaining district court judges) from presiding over the subject appeal. We deny the petition and hold that a Florida judge's report of perceived attorney unprofessionalism to The Florida Bar (or, conversely, an attorney's report of perceived judicial unprofessionalism to the JQC) is, in and of itself, legally insufficient to support that judge's disqualification.
All Florida judges are, first and foremost, attorneys and members of The Florida Bar. See generally art. V, § 8, Fla. Const. As such, Florida judges, just like every other Florida attorney, have an obligation to maintain the integrity of the legal profession and report to The Florida Bar any professional misconduct of a fellow attorney. See R. Regulating Fla. Bar 4-8.3(a). This obligation is reiterated in the Florida Code of Judicial Conduct, which explicitly provides that "[a] judge who receives information or has actual knowledge that substantial likelihood exists that a lawyer has committed a violation of the Rules Regulating The Florida Bar shall take appropriate action." Fla.Code Jud. Conduct, Canon 3D(2).[6] The Florida Code of Judicial Conduct further mandates that judges "should participate in establishing, maintaining, and enforcing high standards of conduct," "shall require order and decorum in proceedings before the judge," and shall require lawyers subject to their direction and control to be "patient, dignified, and courteous." Fla.Code Jud. Conduct, Canons 1, 3B(3), 3B(4).
Given these mandates, we cannot fault the district court for reporting Arslanian to The Florida Bar. Surely, in filing the subject rehearing motion, complete with expletives, derogatory remarks about opposing counsel's argument, and conjectured innuendoes regarding the district court's impartiality, Arslanian showed at the very least a "substantial likelihood" that he had compromised the integrity of the legal profession, engaged in professional misconduct, or violated one or more of the Rules Regulating The Florida Bar.[7] The very Oath of Admission into The Florida Bar requires applicants to solemnly swear to "maintain the respect due to Courts of Justice and Judicial Officers ... [and] abstain from all offensive personality," and the Preamble to the Rules of Professional Conduct in the Rules Regulating The Florida Bar likewise provides that "[a] lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers, and public officials." R. Regulating Fla. Bar Ch. 4. Rule of Professional *247 Conduct 4-3.5(c) further provides that "[a] lawyer shall not engage in conduct intended to disrupt a tribunal," and, as especially pertinent in the present case, the commentary thereto provides in pertinent part:
The advocate's function is to present evidence and argument so that the cause may be decided according to law. Refraining from abusive or obstreperous conduct is a corollary of the advocate's right to speak on behalf of litigants.... An advocate can present the cause, protect the record for subsequent review, and preserve professional integrity by patient firmness no less effectively than by belligerence or theatrics.
See also Florida Bar v. Wasserman, 675 So.2d 103 (Fla.1996) (suspending attorney under rules 3-4.3 (committing an act that is unlawful or contrary to honesty or justice) and 4-8.4(a) (violating the Rules of Professional Conduct) for abusive profanity to a judicial assistant). As for Arslanian's innuendoes regarding the district court's impartiality, rule 4-8.2(a) further provides that "[a] lawyer shall not make a statement ... with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." See also rule 4-4.4 ("[A] lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person...."); rule 4-8.4(d) ("A lawyer shall not ... engage in conduct in connection with the practice of law that is prejudicial to the administration of justice....").
That The Florida Bar ultimately dismissed its complaint against Arslanian is not determinative here, and we do not now question or second-guess that disposition. This is not a disciplinary proceeding. What matters in the present case is that the district court had the grounds, if not the duty, to report Arslanian to The Florida Bar for his perceived unprofessionalism. Our benefit of hindsight does not alter that fact.
Thus, Arslanian's argument that this Court should now disqualify the district court judges from presiding over the present appeal is untenable, as such a holding would not only contradict both the letter and spirit of the canons and rules discussed above, but also discourage Florida judges from reporting questionable attorney behavior to The Florida Bar for fear of the possible repercussions (such as those sought in the present case). As embodied in the subject canons and rules, this Court actively encourages such reporting in order to, among other things, maintain and promote attorney professionalism, high standards of conduct, decorum in Florida courtrooms and pleadings, and the general integrity of the legal profession.[8]
Encouraging such reporting also eliminates any incentive for an attorney to seek a Florida judge's disqualification by intentionally provoking that judge into filing a report with The Florida Bar. Simply stated, encouraging such reporting discourages underhanded "judge shopping" and "forum shopping."[9]See generally Livingston v. State, 441 So.2d 1083, 1086 (Fla.1983)(holding that the requirements set forth in the statutes and rules regarding judge disqualification "were established to ensure public confidence in the integrity of the judicial system as well as to prevent the disqualification process from being *248 abused for the purposes of judge-shopping, delay, or some other reason not related to providing for the fairness and impartiality of the proceeding"); see also State ex rel. Fuente v. Himes, 160 Fla. 757, 767-68, 36 So.2d 433, 438-39 (1948) ("A lawyer cannot disagree with the court and deliberately provoke an incident rendering the court disqualified to proceed further.").
Arslanian argued below, and argues again in the present petition, that Florida Code of Judicial Conduct, Canon 3E(1) absolutely mandates that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might be questioned." We recognize and promote this mandate. However, we today hold that a Florida judge's mere reporting of perceived attorney unprofessionalism to The Florida Bar, in and of itself, is legally insufficient to support judicial disqualification.[10] The same applies in the similar context of an attorney reporting perceived judicial unprofessionalism to the JQC.[11]See Fla.Code Jud. Conduct, Canon 3E(1) cmt. ("[I]f a lawyer or party has previously filed a complaint against the judge with the Judicial Qualifications Commission, that fact does not automatically require disqualification of the judge."); Cherradi v. Andrews, 669 So.2d 326, 327 (Fla. 4th DCA 1996)("Nor does a party's expressed intent to file a complaint with the JQC in itself constitute a legally sufficient ground for recusal."). We explicitly disapprove earlier district court decisions that are to any extent inconsistent with this opinion. See Edwards v. Andrews, 639 So.2d 677 (Fla. 4th DCA 1994)(granting prohibition petition to disqualify trial judge where judge had filed a bar complaint against party's attorney); Feuerman v. Overby, 638 So.2d 179 (Fla. 3d DCA 1994)(granting prohibition petition to disqualify trial judge where judge had reported party's attorney to The Florida Bar, and attorney had reported judge to the JQC).[12]
Of course, regardless of whether such reports to The Florida Bar or the JQC have been filed, disqualification remains available where it can be shown that "the judge has a personal bias or prejudice concerning a party or a party's lawyer[.]" Fla.Code Jud. Conduct Canon 3E(1)(a)(emphasis added). No such showing has been made here. Arslanian's argument that the district court judges may have been "embarrassed, humiliated and even outraged" by the subject course of events, and might therefore be personally biased against Arslanian and retaliate against him and his clients, is speculative, attenuated, and too fanciful to warrant relief. See Fischer v. Knuck, 497 So.2d 240, 242 (Fla.1986)(holding that "[a] verified motion for disqualification must contain an actual factual foundation for the alleged fear of *249 prejudice," and finding that the petitioner's subjective fears, as alleged, were not reasonably sufficient to justify a well-founded fear of prejudice).
Thus, with due respect to the eleven district court judges who recused themselves "in the best interests of justice,"[13] we agree with the four district court judges who found Arslanian's disqualification motion to be facially insufficient, and direct that the subject appeal proceed before a panel of three of those four judges. We accordingly deny the present prohibition petition.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] See art. V, § 3(b)(7), Fla. Const.; see generally Mandico v. Taos Constr., Inc., 605 So.2d 850, 853 (Fla.1992) ("Prohibition is an extraordinary writ by which a superior court may prevent an inferior court or tribunal, over which it has appellate and supervisory jurisdiction, from acting outside its jurisdiction.").
[2] See Red Carpet Corp. v. Gulf Real Estate Invs., Inc., 650 So.2d 995 (Fla. 1st DCA 1995); Red Carpet Corp. v. Gulf Real Estate Invs., Inc., 647 So.2d 116 (Fla. 1st DCA 1994)(both unelaborated per curiam affirmances).
[3] Specifically, Arslanian argued in the rehearing motion as follows:

While it is possible that [opposing counsel's] status as a finalist for position of [judge] with this Court enables him to persuade the Court with non-meritorious arguments, or that the Court truly despises [one of Arslanian's clients] and any cause he is associated with because of his affiliation with his Foundation to Fight Corruption, or perhaps that a Miami lawyer cannot simply get a fair shake up North, the undersigned truly hopes that none of these possibilities could even possibly be true. Yet, when the overwhelming evidence contained herein is coupled with the abrupt silence of the Court [(i.e., its per curiam affirmance)], the Appellants [Arslanian's clients] can only ponder why they have been so treated by the courts.
[4] Quoting Florida Code of Judicial Conduct, Canon 3E(1), which provides in pertinent part that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned[.]"
[5] In Carlton, this Court held that "each justice must determine for himself both the legal sufficiency of a request seeking his disqualification and the propriety of withdrawing in any particular circumstances." 378 So.2d at 1216 (on request for disqualification).
[6] The commentary to immediately related Canon 3D(3) provides in pertinent part that "[a]ppropriate action may include ... reporting the violation to the appropriate authority or other agency.... A judge having knowledge ... that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, is required under this Canon to inform the appropriate authority."
[7] As we quite recently stated in a similar context involving profane name-calling and disrespect between attorneys:

[W]e find the conduct of the lawyers involved in the incident giving rise to these proceedings to be patently unprofessional. We would be naive if we did not acknowledge that the conduct involved herein occurs far too often. We should be and are embarrassed and ashamed for all bar members that such childish and demeaning conduct takes place in the justice system. It is our hope that by publishing this opinion and thereby making public the offending and demeaning exchanges between these particular attorneys, that the entire bar will benefit and realize an attorney's obligation to adhere to the highest professional standards of conduct no matter the location or circumstances in which an attorney's services are being rendered.
Florida Bar v. Martocci, 699 So.2d 1357, 1360 (Fla. 1997).
[8] Rhetorically speaking, who better than judges, who have daily interaction with attorneys, to keep a proverbial finger on the pulse of attorney conduct? In addition to fostering the important policy considerations discussed at length above, such judicial involvement promotes an independent legal profession:

Lawyers are officers of the court and they are responsible to the judiciary for the propriety of their professional activities. Within that context, the legal profession has been granted powers of self-government. Self-regulation helps maintain the legal profession's independence from undue government domination. An independent legal profession is an important force in preserving government under law, for abuse to legal authority is more readily challenged by a profession whose members are not dependent on the executive and legislative branches of government for the right to practice. Supervision by an independent judiciary, and conformity with the rules the judiciary adopts for the profession, assures both independence and responsibility.
Preamble, Rules of Professional Conduct, R. Regulating Fla. Bar Ch. 4.
[9] In so stating, we do not mean to imply that Arslanian in the present case is or was engaged in such underhanded "judge shopping" or "forum shopping."
[10] Several other high courts that have considered the issue have reached essentially the same result. See State v. Mata, 71 Haw. 319, 789 P.2d 1122, 1125-26 (1990)("[W]e hold that neither a reference of an attorney's conduct to the disciplinary board, nor a response to inquiry with respect thereto by Disciplinary Counsel, is a ground for the disqualification of a judge."); Blacknell v. State, 502 N.E.2d 899, 904 (Ind.1987)(holding that judge had an obligation to report attorney's disciplinary infraction, and that such reporting "is in no way evidence of [lack of] impartiality" supporting the appointment of a new judge).
[11] As held in the similar context of a party filing a civil action against a judge:

A defendant in a criminal case cannot disqualify a trial judge by merely filing a civil law action against the judge. To hold otherwise would permit a defendant to decide and control who will be the judge in his own case by merely filing lawsuits against judges he does not prefer. He could thereby ultimately select the judge he does prefer by naming all other judges as parties defendants in baseless civil actions.
Dowda v. Salfi, 455 So.2d 604, 604 (Fla. 5th DCA 1984).
[12] In disapproving these cases, we distinguish other cases that involve something more than a complaint to The Florida Bar or the JQC. See, e.g., Levine v. State, 650 So.2d 666, 667 (Fla. 4th DCA 1995)("The allegations show a well-founded fear of prejudice. Not only did Levine's law firm file a complaint with the JQC, Judge Goldstein attempted to persuade Levine to forego his special public defender's fee in exchange for which the judge would withhold issuing the order to show cause."); see also Town Centre of Islamorada, Inc. v. Overby, 592 So.2d 774, 775-76 (Fla. 3d DCA 1992)(granting prohibition petition to disqualify trial judge based upon "the trial judge's comments and actions" and an "extra-judicial dispute between the judge and counsel," including a suggestion by the judge that counsel's actions might warrant discipline by The Florida Bar).
[13] See In re Estate of Carlton, 378 So.2d 1212, 1220 (Fla.1979)(Overton, J., Denial of Request for Recusal)("Even though a suggestion for disqualification is legally insufficient, a judge may still voluntarily recuse himself if he believes it would be in the best interests for the administration of justice."), cert. denied, 447 U.S. 922, 100 S.Ct. 3013, 65 L.Ed.2d 1114 (1980).