**Electronically Filed
Supreme Court
SCWC-14-0001151
29-JUN-2017
08:11 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

_____

STATE OF HAWAIʻI,
Respondent/Plaintiff-Appellee,

vs.

RYAN NAKAMITSU,
Petitioner/Defendant-Appellant.

_____

SCWC-14-0001151

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-14-0001151; CASE NO. 1DTA-14-02783)

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

JUNE 29, 2017

OPINION OF THE COURT BY WILSON, J.

Petitioner/Defendant-Appellant Ryan Nakamitsu

(Nakamitsu) was convicted of one count of Operating a Vehicle

Under the Influence of an Intoxicant (OVUII) in violation of

Hawaiʻi Revised Statutes (HRS) § 291E-61(a)(1) and/or § 291E-

61(a)(3).[1]  The Intermediate Court of Appeals (ICA) vacated the

conviction for OVUII based on HRS § 291E-61(a)(1), reversed the

conviction for OVUII based on HRS § 291E-61(a)(3), and remanded

for proceedings consistent with its opinion.

In essence, Petitioner Nakamitsu argues that his

conviction under HRS § 291E-61(a)(1) should be reversed rather

than vacated and remanded for a new trial.  Four principal

issues are presented on certiorari.  The first three issues are

raised by Nakamitsu: (1) whether the ICA gravely erred in

holding that the charge was not fatally defective for failing to

include the statutory definition of the term "alcohol"; (2)

---

[1]     Nakamitsu was charged with one count of Operating a Vehicle Under the Influence of an Intoxicant under the two alternate (and/or) statutory bases of HRS § 291E-61(a)(1) and HRS § 291E-61(a)(3).  Roughly speaking, HRS § 291E-61(a)(1) prohibits operating a vehicle while impaired by an intoxicant, while HRS § 291E-61(a)(3) prohibits operating a vehicle while the driver's blood alcohol content exceeds a statutorily-specified level.  Because the two bases can overlap, they are often charged in the conjunctive/disjunctive.  See State v. Codiamat, 131 Hawaiʻi 220, 224, 317 P.3d 664, 668 (2013)(noting that "the preferred method for charging an offense that may be committed in more than one way is to charge in the conjunctive/disjunctive —- alleging that the defendant committed the offense in one way and/or in another way.").

HRS § 291E-61 (2007) provides in relevant part:

(a)  A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

(1)  While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty; [or]

. . . .

(3)  With .08 or more grams of alcohol per two hundred ten liters of breath[.]

whether the ICA gravely erred in holding that the district court did not err in denying Nakamitsu's motion to strike Officer Desiderio's testimony; and (3) whether the ICA gravely erred in holding that there was substantial evidence to support Nakamitsu's conviction under HRS § 291E-61(a)(1).  We consider sua sponte a fourth issue, whether the district court's admonishment of Nakamitsu for his decision to pursue trial violated his constitutional rights to due process and against self-incrimination.

We hold that the ICA did not err concerning the first and third issues.  We find it unnecessary to consider the second issue as to whether the ICA erred in affirming the district court's denial of Nakamitsu's motion to strike Officer Desiderio's testimony.  On the fourth issue, we find that the district court's admonishment of Nakamitsu may have violated his constitutional rights to due process and against self-incrimination.  We affirm the judgment of the ICA vacating the conviction for OVUII in violation of HRS § 291E-61(a)(1), reversing the conviction for OVUII in violation of HRS § 291E-61(a)(3), and remanding for a new trial.

## I.   BACKGROUND

### A. District Court Proceedings

Nakamitsu is an engineer at Pearl Harbor.  In June, 2014, the State charged Nakamitsu with one count of Operating a Vehicle Under the Influence of an Intoxicant as a first time offender.[2]

Nakamitsu filed a Motion to Dismiss Count 1 for Failure to State an Offense.[3]  He argued that the OVUII charge in Count 1 was insufficient because it failed to include the definition of "alcohol" as defined in HRS § 291E-1.  The State opposed the Motion, arguing that the Complaint's reference to "alcohol" was consistent with its commonly-understood meaning. After a hearing, the court denied the Motion.[4]

### 1.   Direct Examination of Officer Desiderio

At trial, Officer Desiderio testified that he responded to a vehicular accident on June 1, 2014 around

---

[2]   In Count 2, Nakamitsu was charged with Inattention to Driving under HRS § 291-12.  He entered a plea of no contest, and his motion for deferred acceptance of his plea was granted.  In Count 3, Nakamitsu was charged with Driving Without Motor Vehicle Insurance under HRS §§ 431:10C-104(a)and 431:10C-117(a).  However, Count 3 was not prosecuted after Nakamitsu provided proof of insurance.

[3]   Nakamitsu also filed a Motion to Suppress his Blood Alcohol Level (BAC) result, arguing that Hawaiʻi's implied consent law and the HRS Chapter 291E provisions criminalizing the refusal to submit to BAC testing were unconstitutional.  The district court summarily denied the motion at trial.

[4]   The Honorable David W. Lo presided.

4:50 a.m.  Upon arriving at the scene, he saw a vehicle on the side of the road in front of a light post that had fallen to the ground.  A man (later identified as Nakamitsu) walked from the vehicle and knelt on the side of the road.  Nakamitsu told Officer Desiderio that he had been driving the vehicle, and then began crying.  Officer Desiderio detected the smell of alcohol on Nakamitsu's body and breath.  Officer Desiderio testified that Nakamitsu was attempting to balance himself and uttering something approximating "I'm fucked, I'm fucked."  Officer Desiderio then conducted a Standardized Field Sobriety Test (SFST).  Nakamitsu exhibited six clues, and failed the Horizontal Gaze Nystagmus (HGN) portion of the test.  According to Officer Desiderio, during the Walk-and-Turn section of the test Nakamitsu kept trying to keep his balance.

On direct examination, in regard to the Walk-and-Turn and One-Leg Stand segments of the test, the State refreshed Officer Desiderio's recollection with a copy of his SFST report:

> [STATE]: Do you remember what -- any clues exhibited during the instructional portion of the . . . [Walk and Turn] test?
>
> [OFFICER DESIDERIO]: Can't recall it.  I have it in my report that I submitted.
>
> [STATE]: Would anything refresh your recollection?
>
> [OFFICER DESIDERIO]: Yes, my report that I submitted.
>
> . . . .
>
> [STATE]: Officer, is -- you recognize this document?

> [OFFICER DESIDERIO]: Yes, ma'am.
>
> [STATE]: What is this?
>
> [OFFICER DESIDERIO]: This is -- what we use for [sic] SFST sheet, the standard --
>
> [STATE]: Is this the . . . [S]FST sheet you used that night?
>
> [OFFICER DESIDERIO]: Yes, ma'am.
>
> [STATE]: Can you refresh your recollection.
>
> [OFFICER DESIDERIO]: Okay.

After a further exchange regarding the Walk-and-Turn segment of the test, the State then asked Officer Desiderio about Nakamitsu's performance on the One-Leg Stand test:

> [STATE]: And do you recall what you observed?
>
> [OFFICER DESIDERIO]: Yes.  Everything is recorded in the report I submitted.
>
> [STATE]: All right . . . . [H]ow many clues can be exhibited? Do you remember?
>
> [OFFICER DESIDERIO]: No, I don't.  I --
>
> [STATE]: Would you like to --
>
> . . . .
>
> [STATE]: -- refresh your memory --
>
> . . . .
>
> [STATE]: -- with your report?
>
> [OFFICER DESIDERIO]: -- yes.
>
> . . . .
>
> [STATE]: Do you independently remember this, once you looked at your report?  Do you remember how [Nakamitsu] did on the test?
>
> [OFFICER DESIDERIO]: Yeah, somewhat remember.

6

[STATE]: Okay. And do you remember what you observed about how he did the test?

[OFFICER DESIDERIO]: Basically, he hops. I -- I do remember [him] putting his foot down at 19 seconds and [sic] kind of swayed sideways. And then -- yeah, he wasn't able to keep his balance during that time.

. . . .

[STATE]: Officer, how many clues did he exhibit on the one-leg stand, do you remember?

[OFFICER DESIDERIO]: At least -- I would say four or more.

## 2.    Cross-Examination of Officer Desiderio

During cross-examination, Officer Desiderio described the National Highway Traffic Safety Administration (NHTSA) standards for administering and grading the SFST. He testified that, in order to be valid, the SFST must be administered and graded in accordance with the NHTSA. Nakamitsu's counsel proceeded to ask Officer Desiderio about Nakamitsu's performance on the SFST:

[NAKAMITSU'S COUNSEL]: Now, on Wednesday you testified that [Nakamitsu] took several more steps than instructed on the walk-and-turn. But isn't it true that he only took one extra step?

[OFFICER DESIDERIO]: Whatever it is in my report, that I wrote in there, that's basically what it --

[NAKAMITSU'S COUNSEL]: If I showed you a copy of your report would . . . it refresh your recollection.

[OFFICER DESIDERIO]: Yes.

Yes. So on the first nine step [sic], took an additional one. And I believe that's the reason why I -- I did put that made the turn, not as instructed.

[NAKAMITSU'S COUNSEL]: Okay. But not several extra steps, just one; correct?

7

[OFFICER DESIDERIO]: I believe so.

Officer Desiderio continued to testify without the aid of his report that while Nakamitsu performed the Walk-and-Turn test, the officer was facing the sidewalk, standing mid-way between the starting and turn points of the imaginary line used for the test. When asked if Nakamitsu walked off the line during the first set of steps, Officer Desiderio said he would need his report to refresh his memory. Nakamitsu's counsel then asked Officer Desiderio if he had any independent recollection of the SFST, or if his testimony was solely based on his reading the SFST report:

> [NAKAMITSU'S COUNSEL]: Okay. Now, when the prosecutor was asking you questions and when I'm asking you questions . . . you need to refer to your report to testify about what your recollection is of -- of this particular field sobriety test; correct?
>
> [OFFICER DESIDERIO]: Yes.
>
> [NAKAMITSU'S COUNSEL]: Do you have any independent recollection of . . . Nakamitsu's performance on the test? Or is it, basically, just reading from your report?
>
> [OFFICER DESIDERIO]: I do have independent recollection, not necessarily of the -- when he was taking the test.
>
> [NAKAMITSU'S COUNSEL]: Okay. So you remember the incident?
>
> [OFFICER DESIDERIO]: Yes.
>
> [NAKAMITSU'S COUNSEL]: You remember Mr. Nakamitsu?
>
> [OFFICER DESIDERIO]: Yes.
>
> [NAKAMITSU'S COUNSEL]: You remember administering the test to him?
>
> [OFFICER DESIDERIO]: Yes.

8

[NAKAMITSU'S COUNSEL]: But the details of the results you don't remember?

[OFFICER DESIDERIO]: Whatever I wrote in there -- because while I was testing, okay, I'll be, like, making tick marks, either when I was (indiscernible) if I have a glove or right on my hand.

. . . .

[NAKAMITSU'S COUNSEL]: Without looking at your writing or your notes or the -- your report, you're not able to testify about his performance on the field sobriety test?

[OFFICER DESIDERIO]: Well, I would need my report.

Nakamitsu's counsel moved to strike Officer Desiderio's testimony describing Nakamitsu's SFST on the grounds that the officer could not testify without his report. The State responded that Officer Desiderio could recall details surrounding the SFST, but could not be expected to remember all details about Nakamitsu's performance without the aid of his report. The district court denied Nakamitsu's motion.

3. **Testimony of Officer Tabanera**

Officer Tabanera testified that on June 1, 2014, at approximately 4:15 a.m., he arrived at the scene of the accident and observed that Nakamitsu's eyes were red and glassy. Officer Tabanera also testified that Nakamitsu smelled like alcohol. Officer Tabanera investigated the accident and observed Nakamitsu's vehicle resting at the base of a street light pole, and the pole dislodged and laying on the ground. The front bumper and engine area of Nakamitsu's vehicle were severely

9

damaged.  Officer Tabanera did not see any marks on the road
that would have resulted from use of a vehicle's brakes, and he
did not observe any other vehicles or obstructions on the road.

### 4.    District Court Ruling and Sentencing

The court found Nakamitsu guilty as charged under both
HRS § 291E-61(a)(1) and HRS § 291E-61(a)(3), deciding that
Officer Desiderio's testimony was unnecessary for the
conviction:

> THE COURT:  Court finds the evidence beyond a
> reasonable doubt to find [Nakamitsu] guilty on both the
> 291E-61(a)(1) as well as the [291E]-61(a)(3) charge.  And
> the court finds [Nakamitsu] guilty based on what happened.
>
> And Court also finds that evidence concerning the
> [SFST], while there is some questions as to the weight or
> . . . the manner in which Officer Desiderio gave his
> testimony that it was not even necessary to convict the
> defendant, find the defendant guilty on the (a)(1) charge.

After issuing the court ruling, the district judge
asked Nakamitsu for any final words before imposing the
sentence.  Nakamitsu expressed remorse for his actions affecting
his job and family, and apologized to the court.  The judge then
heard from the State, which asked for a $500.00 fine and minimum
sentencing.  Nakamitsu's counsel agreed to the $500.00 fine,
acknowledging his client's remorse.  The judge accepted
Nakamitsu's apology, but raised his concern that Nakamitsu did
not readily accept responsibility at the outset of trial:

> [THE COURT]:  I am totally convinced he's very
> remorseful.  I'm totally convinced that it's not going to
> happen again.  I really find that Mr. Nakamitsu was

10

remorseful at the scene of the accident. But what bothers the Court the most is that acceptance of responsibility was not readily done.

[COUNSEL FOR NAKAMITSU]: And, Your Honor, there are cases -- there are cases where we -- people are not willing to accept responsibility because they are just not those types of people. In this case there are two legal issues that I explained to Mr. Nakamitsu and explained the issues on appeal. And it's not because he didn't want to accept responsibility; it was because these issues are out there and we would like to appeal.

. . . .

[THE COURT]: I mean, does he have to hit a person on the sidewalk for you folks to accept responsibility? I mean, that's -- the conduct is no different. That's what I find so bothersome.

[COUNSEL FOR NAKAMITSU]: I understand.

[THE COURT]: And you were warned about this. You guys wanted to play with fire, and somebody's going to get burned.

. . . .

[THE COURT]: What is it going to take to accept responsibility? You know, after Wednesday's testimony -- I didn't want to pre-judge this case, but just on what happened, this is a person that should be in jail. So you guys want to play with fire, you suffer the consequences. Someone's going to get burned. All I can say is, best of luck on appeal. But I have to do what I have to do.

[COUNSEL FOR NAKAMITSU]: Yes, Your Honor.

[THE COURT]: You're not the type I think needs to go to jail, Mr. Nakamitsu. But what really bothers me is your -- the four of you discussing that you want to roll the dice.

You know, somebody on your behalf came to court on June 30th, within 30 days after this incident. If you're really remorseful, that's when responsibility should have been taken. I don't fault you. You hired an attorney. You hired a good attorney, that advised you. I think all of you made the wrong decision. That's what I find bothersome.

[COUNSEL FOR NAKAMITSU]: And, Your Honor, I -- I -- I would ask that, you know, maybe my advice wasn't -- wasn't the good advice; but I would -- I would ask you to not take that out against my client. I -- I understand that ultimately it's his choice. But he hires an attorney

11

for advice.  If you're going to take it out against somebody, I ask that you take it out against me and -- not my client.

[THE COURT]:  Well, I am.

[COUNSEL FOR NAKAMITSU]:  Yeah.

[THE COURT]:  And, you know, I don't want to take it out against any -- any -- any -- any -- any defendant personally.  But, Mr. [Counsel for Nakamitsu], I've been talking to you for over a year now -- and I'm going to put this on the record.

[COUNSEL FOR NAKAMITSU]:  Okay.

[THE COURT]: I admire you as an attorney, but you have a history of all take and no give.  I don't -- I don't see you accepting responsibility when you should.

You were warned about this.  I told you on Wednesday. I asked you, you want to roll the dice on this one?  You say, let me talk to my client.  All right, talk to him; and that was his decision.  But you guys want to play with fire, you're going to get burned, guarantee.

Status of the license?

. . . .

[THE COURT]:  I'm revoking it for one year, forthwith.  750 dollar fine.  Undergo substance abuse assessment and classes.  107 DE.  30 CVCF.  25 neurotrauma. 100 DDRA.

You know, my thoughts were to – to give you 1,000 dollar fine and – and make you perform 72 hours of community service, as well.  I'll back off on that.  All right.  That's all.

## B.  ICA Decision

In a memorandum opinion, the ICA affirmed the district court's rulings regarding the issues raised by Nakamitsu in his appeal.  First, the ICA explained that in State v. Turping, 136 Hawai'i 333, 361 P.3d 1236 (App. 2015), the court rejected the argument that a charge was deficient for failing to include the

12

definition of alcohol.  The ICA also noted its previous rejection of the argument that alcohol, as defined by HRS § 291E-1, is limited to distilled forms in State v. Tsujimura, 137 Hawaiʻi 117, 120, 366 P.3d 173, 176 (App. 2016), as corrected (May 2, 2016).  The ICA in Tsujimura read the plain language of HRS § 291E-1's definition of "alcohol" as specifically including ethyl alcohol.  Because ethyl alcohol is the intoxicating agent in beer and wine, the Tsujimura court reasoned that the statutory definition includes both beer and wine, as well as distilled liquors.  Id. at 120, 366 P.3d at 176.[5]

Second, regarding the admissibility of Officer Desiderio's testimony, the ICA concluded that "although Officer Desiderio's recollection of Nakamitsu's performance on the SFST had to be repeatedly refreshed, his testimony was not based on his memory of the report only" because Officer Desiderio remembered significant details about the incident prior to refreshing his memory with the report, and did not state that his testimony was based only on reading the report.

Third, the ICA examined the record of the two colloquies required in cases where a defendant chooses not to

---

[5]     We recently upheld the ICA's holding in Tsujimura that "alcohol" is not limited to alcohol produced through distillation, but we vacated the judgment and remanded the case for a new trial on constitutional grounds. State v. Tsujimura, Slip Op. at 15-19, 52, 2017 WL 2361154, at *6-7, *18 (May 31, 2017).

13

testify: (1) the "prior-to-trial colloquy," and (2) the "ultimate colloquy." Although Nakamitsu had not raised the issue, the ICA reviewed it for plain error. In light of Tachibana v. State, 79 Hawaiʻi 226, 236, 900 P.2d 1293, 1303 (1995), the ICA held that the ultimate colloquy between the district court and Nakamitsu was deficient. Because the ICA could not say that the deficiency was harmless beyond a reasonable doubt, it vacated Nakamitsu's conviction for OVUII under HRS § 291E-61(a)(1).

Fourth, having determined that the ultimate colloquy was deficient and that it was not harmless error, the ICA conducted a review of the sufficiency of the evidence to convict. See State v. Davis, 133 Hawaiʻi 102, 120, 324 P.3d 912, 930 (2014) (given the constitutional protection against double jeopardy, as well as policy reasons, "a reviewing court is required under article I, section 10 of the Hawaiʻi Constitution to address a defendant's express claim of insufficiency of the evidence prior to remanding for a new trial based on a defective charge.") The ICA found sufficient evidence to convict Nakamitsu of OVUII in violation of HRS § 291E-61(a)(1). It based this conclusion on Officer Desiderio's testimony that Nakamitsu walked away from a vehicle on the side of the road that was in front of a fallen light post, that he smelled of

14

alcohol, tried to balance himself, knelt down, and volunteered expletives lamenting the seriousness of his actions, and that he had failed the SFST. In reaching its holding, the ICA also considered Officer Tabanera's testimony that Nakamitsu had red and glassy eyes, that the vehicle's front bumper and engine were severely damaged, and that there were no marks on the road suggesting the vehicle's brakes were applied.

Fifth, the ICA held that the district court erred in denying Nakamitsu's motion in limine to suppress his blood alcohol content measurement. Without the inadmissible BAC evidence, there was insufficient evidence to support the conviction for OVUII under HRS § 291E-61(a)(3). Accordingly, the ICA reversed Nakamitsu's conviction under HRS § 291E-61(a)(3).[6]

## II. STANDARDS OF REVIEW

### A. Statutory Interpretation

"When construing a statute, this court's foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. In addition, we must read statutory language in the context of the entire statute and

---

[6]    Nakamitsu does not appeal the ICA's favorable holdings regarding the deficiency of the ultimate colloquy and the insufficiency of the evidence to support a conviction under HRS § 291E-61(a)(3).

15

construe it in a manner consistent with its purpose." State v.

McKnight, 131 Hawai'i 379, 388, 319 P.3d 298, 307 (2013)

(citations, internal quotation marks, and brackets omitted).

**B.  Sufficiency of the Evidence**

"[E]vidence adduced in the trial court must be

considered in the strongest light for the prosecution when the

appellate court passes on the legal sufficiency of such evidence

to support a conviction . . . .  The test on appeal is not

whether guilt is established beyond a reasonable doubt, but

whether there was substantial evidence to support the conclusion

of the trier of fact."  State v. Richie, 88 Hawai'i 19, 33, 960

P.2d 1227, 1241 (1998)(citation omitted).

### III. DISCUSSION

**A.   The OVUII Charge Was Not Defective for Failing to Define
     "Alcohol"**

On appeal, Nakamitsu argues the ICA gravely erred in

holding that the OVUII charge was not fatally defective for

failing to define "alcohol."  According to Nakamitsu, the

definition of "alcohol" in HRS § 291E-1[7] is limited to the

---

[7]     For purposes of the OVUII offense at issue here, "alcohol" is
defined as follows:

> Alcohol means the product of distillation of any fermented
> liquid, regardless of whether rectified, whatever may be
> the origin thereof, and includes ethyl alcohol, lower
> aliphatic alcohol, and phenol as well as synthetic ethyl
> alcohol, but not denatured or other alcohol that is

(continued. . .)

products of distillation, and does not include beer or wine.  He argues that a plain reading of the definition shows that for purposes of the statute, "alcohol" only encompasses "products of distillation" —- i.e., liquor.  Thus, he contends the OVUII charge did not adequately inform him of the nature and cause of the accusation against him because it failed to include the definition of alcohol.

We recently addressed this issue in State v. Tsujimura, Slip Op. at 15-19, 2017 WL 2361154, at *6-7 (May 31, 2017).  Like Nakamitsu, the defendant in Tsujimura argued that the definition of "alcohol" in HRS § 291E-1 is limited to the products of distillation.  After carefully analyzing the statute, we concluded that the meaning of "alcohol" in that statute "is inclusive of ethyl alcohol, also commonly known as ethanol, which 'is the intoxicating agent in beer, wine, and other fermented and distilled liquors.'  Accordingly, the statutory definition of 'alcohol' includes beer, wine, and other fermented liquors because these substances contain ethanol." Tsujimura, Slip Op. at 18, 2017 WL 2361154, at *7 (citation

---

(. . . continued)
        considered not potable under the customs laws of the United
        States.

HRS § 291E-1 (2007).  In 2016, the legislature  simplified and clarified the definition.  2016 Haw. Sess. Laws, Act 231, § 59 ("'Alcohol' means ethanol or any substance containing ethanol.")

17

omitted, footnotes omitted).  Given our recent holding in Tsujimura, we conclude that the ICA properly determined that Nakamitsu's charge was not fatally defective for failing to include the statutory definition of "alcohol."

**B.    Substantial Evidence Supports Nakamitsu's Conviction Under HRS § 291E-61(a)(1)**

In reviewing for sufficiency of the evidence to support a conviction, we consider evidence admitted at trial "in the strongest light for the prosecution . . . .  The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact."  Richie, 88 Hawai'i at 33, 960 P.2d at 1241 (citation omitted); Davis, 133 Hawai'i at 116, 324 P.3d 926 (noting that even where the appellate court finds trial error, "challenges to the sufficiency of the evidence must always be decided on appeal" or retrial would raise double jeopardy concerns (citation omitted)).  Nakamitsu argues that without Officer Desiderio's testimony regarding the SFST, and given the absence of any direct evidence establishing how the accident occurred, there was insufficient evidence to convict him of OVUII.

In addition to testifying regarding the SFST, Officer Desiderio also testified that he observed the vehicle on the side of the road in front of a light post that had fallen, and

18

that Nakamitsu walked away from the vehicle, had some difficulty keeping his balance, knelt down, cried, admitted he was the driver of the vehicle, and smelled of alcohol. His speech was slurred and his face was flushed. In addition, Officer Tabanera described Nakamitsu as having red and glassy eyes and emitting the smell of an intoxicant. Officer Tabanera testified that the vehicle had come to rest on top of the streetlight post, and that the vehicle's front bumper and engine area were severely damaged. He also testified that there were no marks on the ground indicating the brakes had been applied, and that there were no other obstructions on the roadway.

Considering the testimony of the two officers in the most favorable light for the prosecution, we conclude that —- even absent the testimony of Officer Desiderio regarding Nakamitsu's performance on the SFST —- there was substantial evidence that Nakamitsu operated his vehicle under the influence of alcohol in violation of HRS § 291E-61(a)(1). Accordingly, we find it unnecessary to consider whether Officer Desiderio's recollection was refreshed when he testified about Nakamitsu's performance on the SFST.

**C.** **The District Court's Admonishment of Nakamitsu for His Decision to Pursue Trial May Have Violated His Constitutional Rights to Due Process and Against Self-incrimination**

At sentencing, the district court judge made comments to Nakamitsu and his counsel regarding Nakamitsu's decision to proceed with trial. Before discussing those comments, we note that the ICA remanded for a new trial based on the deficiency of the ultimate colloquy. While we affirm the ICA's decision, we nonetheless address this issue in order to provide guidance regarding a court's reliance on a defendant's refusal to admit guilt in imposing a sentence. See Chun v. Bd. of Trustees of Employees' Ret. Sys. of State of Hawaii, 92 Hawai'i 432, 434-35, 992 P.2d 127, 129-30 (2000)(noting that although the court's holding on one point "is outcome-dispositive of the present appeal," the court would address an additional issue "in order to provide guidance to the parties and the circuit court on remand").

Due process, as guaranteed under article I, section 5, of the Hawai'i Constitution,[8] requires that a defendant be sentenced by an impartial judge. Peters v. Jamieson, 48 Haw. 247, 255, 397 P.2d 575, 582 (1964); State v. Silva, 78 Hawai'i

---

[8] The Hawai'i Constitution provides, in relevant part, "No person shall be deprived of life, liberty or property without due process of law . . . ." Haw. Const. art. I, § 5.

115, 118, 890 P.2d 702, 705 (1995), abrogated on other grounds by Tachibana v. State, 79 Hawai'i 226, 900 P.2d 1293 (1995).  A judge must remain impartial during trial, never "assum[ing] the role of an advocate for either party."  State v. Schutter, 60 Haw. 221, 222, 588 P.2d 428, 429 (1978).  If a judge succumbs to partiality, the resulting sentence must be set aside.  Territory v. Van Culin, 36 Haw. 153, 162 (1942).

During sentencing, a judge may consider a defendant's guilty plea, indications of remorse, and commitment to rehabilitation.  State v. Mata, 71 Haw. 319, 326, 789 P.2d 1122, 1126 (1990).  However, a judge may not "induce a plea of guilty by hinting at more lenient sentencing without violating . . . a defendant's constitutional rights."  Id.  Nor may a court "infer a lack of remorse from a criminal defendant's refusal to admit guilt."  State v. Kamana'o, 103 Hawai'i 315, 321, 82 P.3d 401, 407 (2003), as corrected (Dec. 17, 2003).  In other words, while lack of remorse legitimately may be considered as a factor in sentencing, a court may never cross the line into attempting "to compel an admission of guilt or punish the defendant for maintaining his innocence."  Kamana'o, 103 Hawai'i at 321, 82 P.3d at 407 (citation omitted).  Such an attempt would raise due process questions concerning the court's impartiality.  It would also violate the defendant's right against self-incrimination.

21

See id. at 320-321, 82 P.3d at 406-407 ("Although most commonly reviewed in the context of the adjudicatory phase of a trial proceeding, the privilege against self-incrimination applies with equal force during sentencing.").

In Kamana'o, this court adopted a three-factor test from the Michigan Supreme Court to determine whether the sentencing court erroneously relied on a defendant's refusal to admit guilt in imposing a sentence. Id. at 323, 82 P.3d at 409. The factors we considered were (1) the defendant's maintenance of innocence after the conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that, had the defendant affirmatively admitted guilt, his sentence would not have been so severe. Id. We explained that "if there is an indication of the three factors, then the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence." Id. (quoting People v. Wesley, 411 N.W.2d 159, 162 (Mich. 1987)).

Applying these factors to Nakamitsu's case, we note that the district court clearly exhibited frustration with Nakamitsu's decision to maintain his innocence and assert his right to trial. The court stated that Nakamitsu's expression of remorse at sentencing was questionable because his counsel did not take responsibility for the accident at the first court

22

date, and "[i]f you're really remorseful, that's when responsibility should have been taken." The court unequivocally identified Nakamitsu's decision not to take responsibility as "the wrong decision." Nakamitsu was told his decision to proceed to trial rather than plead guilty constituted a decision to "play with fire" for which "you're going to get burned":

> You were warned about this. I told you on Wednesday. I asked you, you want to roll the dice on this one? You say, let me talk to my client. All right, talk to him; and that was his decision. But you guys want to play with fire, you're going to get burned, guarantee [sic].

Based on this record, it is reasonable to infer that the sentence was "likely to have been improperly influenced by the defendant's persistence in his innocence." Kamana'o, 103 Hawai'i at 323, 82 P.3d at 409 (quoting People v. Wesley, 411 N.W.2d 159, 162 (Mich. 1987). If the district court erroneously relied on Nakamitsu's refusal to admit guilt in imposing its sentence, that reliance would have violated Nakamitsu's constitutional right to due process and his right against self-incrimination. See Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort" (citation omitted)); Kamana'o, 103 Hawai'i at 320, 82 P.3d at 406-407. It is not necessary for us to resolve the question of improper influence in this case, as we affirm the

ICA's judgment vacating and remanding for a new trial on another ground.  Nonetheless, we stress that, under article I, section 5 of the Hawai'i Constitution, a sentencing court may not rely on a defendant's persistence in maintaining his or her innocence in imposing a sentence.

## IV.  CONCLUSION

The ICA reversed Nakamitsu's conviction for OVUII in violation of HRS § 291E-61(a)(3), vacated his conviction for OVUII in violation of HRS § 291E-61(a)(1) based on the deficiency of the ultimate colloquy, and remanded for a new trial.  For the reasons detailed above, we affirm the ICA's February 25, 2016 judgment on appeal.

Alen M. Kaneshiro for
Petitioner/Defendant-
Appellant

Keith M. Kaneshiro
Sonja P. McCullen for
Respondent/Plaintiff-
Appellee

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson

